# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JULIE K. MORAL,** | ) |
| | ) |
| **Plaintiff,** | ) CIVIL ACTION |
| | ) |
| v. | ) No. 10-2595-KHV/KGG |
| | ) |
| **RONALD HAGEN,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Julie K. Moral brings suit pro se against Ronald Hagen, an agent for the Kansas Bureau of Investigation ("KBI"), under 42 U.S.C. § 1983. Plaintiff claims that defendant violated her rights under the First, Fourth and Eighth Amendments to the United States Constitution. Under Rule 12(b)(6), Fed. R. Civ. P., defendant moves to dismiss plaintiff's First and Fourth Amendment claims, which plaintiff styles as claims for retaliation and malicious prosecution respectively.[1] Defendant asserts that the complaint fails to state a claim and, that as a government official, he has qualified immunity from suit. This matter is before the Court on Defendant Ronald Hagen's Motion To Dismiss (Doc. #8) filed December 13, 2010 and Plaintiff's Supplemental Exhibit In Response To Defendant Ronald Hagen's Motion To Dismiss And Memorandum In Support Pursuant To Fed. R. Civ. P. 12(b) (Doc. 8 & 9) (Doc. #16) filed January 6, 2011, which the Court construes as a motion to file a surreply. For the following reasons, the Court sustains defendant's motion in part and overrules plaintiff's motion.

## Legal Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded factual allegations and determines whether they plausibly give

---

[1] Plaintiff's complaint alleges that defendant also violated her Eighth Amendment right against excessive bail. Defendant's motion to dismiss does not mention this claim and it therefore remains unchallenged.

rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).[2]  Because plaintiff proceeds pro se, the Court construes her complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate for a pro se litigant. See id.  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible – and not merely conceivable – on its face. See Iqbal, 129 S. Ct. at 1949-50; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court draws on its judicial experience and common sense to determine whether a complaint states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950.

The Court does not accept as true those allegations which state only legal conclusions. Id. at 1949. Plaintiff bears the burden to frame her complaint with enough factual matter to suggest that she is entitled to relief; a threadbare recitation of the elements of a cause of action supported by labels and conclusions without further factual enhancement is not enough. Id. at 1949-50. To be facially plausible, plaintiff's complaint must contain factual content from which the Court can reasonably infer that defendant is liable for the misconduct she alleges. Id. at 1949. Thus, plaintiff must show more than a sheer possibility that defendant has acted unlawfully, and must plead facts that are more than "merely consistent" with liability. Id. (citing Twombly, 550 U.S. at 557). Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity required to establish plausibility is context-specific because what constitutes fair notice under Rule 8(a)(2), Fed.

---

[2]  Although the Tenth Circuit once imposed a heightened pleading standard when a defendant raised qualified immunity as a defense, it has now held that the heightened requirement did not survive the Supreme Court decision in Crawford-El v. Britton, 523 U.S. 574 (1998). Currier v. Duran, 242 F.3d 905, 916 (10th Cir. 2001); Coburn v. Nordeen, 72 Fed. Appx. 744, 745-46 (10th Cir. 2003).

R. Civ. P., depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## **Factual Background**

Plaintiff's complaint alleges the following facts.[3]

In March of 2009, defendant told plaintiff to dissociate from her husband, whom defendant was investigating. Plaintiff remained with her husband. On or about November 9, 2009, plaintiff reported defendant to the KBI internal affairs division on an unrelated matter. On January 12, 2010, defendant filed an affidavit which provided the sole support for a warrant for plaintiff's arrest. The affidavit alleged that plaintiff had committed theft in violation of K.S.A. § 21-3701, made a false information in violation of K.S.A. § 21-3711, given a worthless check in violation of K.S.A. § 21-3707 and conspired in violation of K.S.A. § 21-3302. Specifically, the affidavit may be summarized as follows:

> On October 31, 2008, defendant opened an investigation into plaintiff and her husband, Carlos Moral, as a result of an investigation by the Grant County Sheriff. The Sheriff had received a complaint that Carlos Moral had tried to cover a debt with more than $400,000 in bad checks. The Sheriff gave defendant 28 bad checks drawn on bank accounts that belonged to plaintiff, her husband and their company, M & M Investors, Inc. The checks totaled $424,538. Because of a conflict of interest in the Grant County Attorney's Office, the Sheriff asked the KBI to further investigate the complaint.
>
> That same day, October 31, 2008, defendant located a felony arrest warrant for Carlos Moral in the District Court of Reno County, Kansas. The warrant was for giving a worthless check, drawn on an E-Trade account, to Lucke and Associates in the amount of $7,200. The Sheriff and defendant arrested Carlos Moral on the warrant.
>
> On July 15, 2009, the Grant County District Court issued an arrest warrant for Carlos Moral which charged him with 29 felonies. Authorities arrested Carlos Moral the same day.
>
> On August 19, 2009, defendant interviewed the publisher of the Garden City

---

[3] The Court has also considered the exhibits attached to the complaint. See Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (exhibits attached to complaint properly treated as part of pleadings); Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 964-65 (10th Cir. 1994).

Telegram, Dena Sattler. She told defendant that Carlos Moral had tried to pass an invalid credit card and worthless check to cover an outstanding bill. The Telegram had entered into an agreement with plaintiff and her husband to print their newspaper, the Grant County Gazette, for a fee. At some point, plaintiff and her husband refused to pay the Telegram and accrued an outstanding bill of $4,130.82. On June 30, 2009, plaintiff e-mailed Sattler that an accountant in Wichita, Kansas had caused the delay in payment. Around the same time, Carlos Moral represented to the Telegram that Scott Davis was the accountant causing the problem. The Telegram also received a fax regarding Davis from the Tiger Lily, plaintiff's flower shop in Ulysses, Kansas.

On August 19, 2009, defendant interviewed the Telegram's business manager, Marisa Perez. Perez told defendant that Carlos Moral had sent her a copy of a Fed Ex airbill to verify that Davis would satisfy the publishing debt. The airbill gave a false address and phone number for Davis. The address which Carlos Moral gave was for residential apartments. No one by the name of Scott Davis lived there, but David Lutz, a known associate of plaintiff and her husband, did live there.

After a period of time, Perez contacted Carlos Moral and demanded payment. Carlos Moral gave her a credit card number and asked that Perez only use it on the 15th and 30th of the month. Perez checked with various credit card companies and found that the credit card number was invalid. When she told Carlos Moral that it was invalid, he did not dispute it and instead gave her a check drawn on an E-Trade account.[4] Perez contacted E-Trade and found that the check was worthless.[5]

See Doc. #1 at 10-16.

Based on defendant's affidavit, the District Court of Finney County, Kansas issued a warrant for plaintiff's arrest. On January 21, 2010, law enforcement officers arrested plaintiff and removed her from her home in handcuffs and in plain sight. While plaintiff awaited transport to jail, defendant laughed and snickered at her. Officers then transported plaintiff to the Finney County Jail. The trip took more than one hour, during which plaintiff remained in handcuffs and shackles.

---

[4] The parties dispute whether the E-Trade check was a legal check for purposes of the worthless check statute. Although the Court refers to the E-Trade document as a "check" it does not determine whether it constitutes a check for purposes of the worthless check statute.

[5] Defendant's report from his interview with Perez indicates that she told him that the E-Trade check did not have a date or signature.

The Telegram and the Ulysses News published front-page articles about plaintiff's arrest. The Ulysses News included plaintiff's mug shot and was distributed to the schools that plaintiff's children attend.

On January 21, 2010, the State of Kansas filed a criminal complaint which charged plaintiff with one count of theft of services and one count of giving a worthless check. The complaint listed 17 witnesses including defendant. Based on defendant's affidavit, the District Court of Finney County set plaintiff's bail at $25,000. At a preliminary hearing on January 27, 2010, Judge Ricklin Pierce – the same judge who had issued the arrest warrant – ruled that the State lacked probable cause with respect to both charges. Accordingly, he dismissed all charges against plaintiff.

Plaintiff's complaint alleges that defendant engaged in malicious prosecution by purposefully disregarding the inaccuracy of his affidavit. Specifically, it alleges that defendant's affidavit did not implicate plaintiff in any of the crimes alleged and did not match defendant's investigative reports. Thus, she alleges, defendant caused her to be arrested without probable cause in violation of the Fourth Amendment. She also alleges that defendant submitted the affidavit in retaliation for reporting him to the KBI internal affairs department and for remaining with her husband.

**Analysis**

Plaintiff brings suit under Section 1983 alleging that (1) in violation of the Fourth Amendment, defendant obtained a warrant for her arrest without probable cause, and (2) in violation of the First Amendment, defendant retaliated against her for filing a complaint with the KBI internal affairs department and for remaining with her husband.[6] Defendant moves to dismiss both claims for failure

---

[6] To state a claim under Section 1983, plaintiff must plausibly allege that defendant deprived her of a federal right and that he acted under color of state law in doing so. 42 U.S.C. § 1983;
(continued...)

to state a claim and because he is entitled to qualified immunity.

**I.      Malicious Prosecution**

The following elements of common law malicious prosecution are the starting point for analysis of a Section 1983 malicious prosecution claim: (1) defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) the original arrest, continued confinement or prosecution was not supported by probable cause; (4) defendant acted with malice; and (5) plaintiff sustained damages. Wilkins v. DeReyes, 528 F.3d 790, 797 (10th Cir. 2008), cert. denied 129 S. Ct. 1526 (2009); Novitsky v. City of Aurora, 491 F.3d 1244, 1257-58 (10th Cir. 2007). The ultimate question, however, is whether plaintiff has alleged a constitutional violation. See Wilkins, 528 F.3d at 797 (probable cause element provides necessary connection between common law tort and Fourth Amendment). Defendant challenges only the third and fourth elements, i.e. whether probable cause supported plaintiff's arrest and whether defendant acted with malice.

**A.      Probable Cause**

Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime. Wilkins, 528 F.3d at 801; Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996). The complaint alleges that defendant's affidavit lacked probable cause for two reasons: (1) it did not contain any information connecting plaintiff to the alleged crimes, see Civil Complaint (Doc. #1) at 7, ¶ 16, i.e. the affidavit was insufficient on its face to establish probable cause, and (2) defendant's investigation reports do not match his

---

[6](...continued)
Iqbal, 129 S. Ct. at 1949; West v. Atkins, 487 U.S. 42, 48 (1988). Defendant does not contest that he acted under color of state law; he only argues that plaintiff has not sufficiently alleged that he violated her constitutional rights.

affidavit, see Doc. #1 at 7, ¶¶ 17-18, 20, i.e. defendant omitted facts that would have vitiated probable cause.[7] Although plaintiff characterized defendant's affidavit as "false" and alleged that it would have vitiated probable cause if certain information had been included, her characterizations are merely conclusory – not well-pled facts which must be accepted as true. Coburn, 72 Fed. Appx. at 746 (citing S. Disposal, Inc. v. Tex. Waste Mgmt., 161 F.3d 1259, 1262 (10th Cir. 1998)).

  *1. Allegations In Affidavit*

Defendant's affidavit averred that plaintiff, her husband and their company committed theft in violation of K.S.A. § 21-3701,[8] made a false information in violation of K.S.A. § 21-3711,[9] gave a

---

[7] Defendant places great weight on the fact that a magistrate judge independently verified his probable cause to arrest plaintiff, while plaintiff emphasizes that the same magistrate judge later held that the State lacked probable cause to press charges. Neither argument withstands scrutiny. The Supreme Court has rejected defendant's argument. Malley v. Briggs, 475 U.S. 335, 345-46 (1986) (rejecting argument that officer is entitled to rely on judgment of judicial officer because "it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should"). Plaintiff's argument is equally without merit because the State only charged plaintiff with theft of services and giving a worthless check while defendant's affidavit also alleged making a false information and conspiracy. Moreover, Malley presumably would apply with equal force to the judge's determination at the preliminary hearing, i.e. working under docket pressures, a magistrate might fail to perform as a magistrate should. Likewise, plaintiff's argument that the Rooker-Feldman doctrine precludes the Court from determining whether defendant's affidavit supported a finding of probable cause is without merit. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U .S. 280, 284 (2005) (Rooker-Feldman bar "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court"); Mann v. Boatright, 477 F.3d 1140, 1446 (10th Cir. 2007).

[8] K.S.A. § 21-3701 provides in part as follows:

Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
  (1) Obtaining or exerting unauthorized control over property;
  (2) obtaining by deception control over property;
  (3) obtaining by threat control over property; or
  (4) obtaining control over stolen property knowing the property to have been stolen by another.

(continued...)

worthless check in violation of K.S.A. § 21-3707[10] and conspired in violation of K.S.A. § 21-3302.[11]

Doc. #1 at 10. Specifically, it averred that (1) plaintiff's husband had written more than $400,000 in bad checks from bank accounts belonging to plaintiff, her husband and their company; (2) plaintiff

---

[8](...continued)
K.S.A. § 21-3701(a) (repealed and recodified by 2010 Kan. Sess. Laws Ch. 136, New Sec. 87, which combines theft of property and theft of services but makes no other material change).

[9] K.S.A. § 21-3711 provides in part as follows:

> Making false information is making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action.

K.S.A. § 21-3711 (repealed and recodified without change by 2010 Kan. Sess. Laws Ch. 136, New Sec. 110).

[10] K.S.A. § 21-3707 provides in part as follows:

> Giving a worthless check is the making, drawing, issuing or delivering or causing or directing the making, drawing, issuing or delivering of any check, order or draft on any bank, credit union, savings and loan association or depository for the payment of money or its equivalent with intent to defraud and knowing, at the time of the making, drawing, issuing or delivering of such check, order or draft, that the maker or drawer has no deposit in or credits with the drawee or has not sufficient funds in, or credits with, the drawee for the payment of such check, order or draft in full upon its presentation.

K.S.A. § 21-3707(a) (repealed and recodified without change by 2010 Kan. Sess. Laws Ch. 136, New Sec. 107).

[11] K.S.A. § 21-3302 provides in part as follows:

> A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator.

K.S.A. § 21-3302(a) (repealed and recodified without change by 2010 Kan. Sess. Laws Ch. 136, New Sec. 34).

helped her husband avoid paying a debt to the Telegram by e-mailing the publisher that a non-existent accountant was responsible for the delay in payment; (3) plaintiff's flower shop sent a fax which indicated that the accountant would satisfy the debt; (4) plaintiff's husband tried to pay the debt with an E-Trade check – a written instrument which purported to be but was not actually capable of satisfying the debt; and (5) plaintiff refused to speak with the Telegram business manager about the worthless check which her husband used to try to pay the debt. Taken together, these allegations established probable cause to believe that at a minimum, plaintiff had conspired with her husband to make a false information – a writing that was not what it purported to be – with intent to defraud. Therefore, on its face the affidavit provided probable cause to arrest plaintiff.

### 2. *Material Omissions From Affidavit*

The complaint alleges that defendant's probable cause affidavit was false, that his investigation reports did not match his affidavit and that defendant purposefully disregarded the inaccuracies in his affidavit. In responding to defendant's motion to dismiss, plaintiff argues that defendant's affidavit omitted material facts about the E-Trade check which would have vitiated probable cause.[12]

---

[12] As previously noted, plaintiff moves to supplement her response to defendant's motion to dismiss with an interrogatory response by Perez, the business manager of the Telegram. The Court construes the motion as a motion for leave to file a surreply. The Court typically does not allow surreplies, see Metzger v. City of Leawood, 144 F. Supp.2d 1225, 1266 (D. Kan. 2001), except in rare cases with leave of court, Humphries v. Williams Natural Gas Co., No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998). For example, a nonmoving party should be given an opportunity to respond to new material raised for the first time in a reply brief. Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005). For purposes of this analysis, "material" includes both new evidence and new legal arguments. Id.; Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

Here, plaintiff provides supplemental evidence which she received after she filed her response to defendant's motion – specifically, an interrogatory answer from Perez regarding her interview with defendant. By rule, on a motion to dismiss, the Court does not consider matters outside the complaint or the attachments thereto. See Fed. R. Civ. P. 12(d). Therefore, the Court overrules plaintiff's
(continued...)

Specifically, she asserts that defendant withheld the fact that the check did not have a date or amount and never entered the banking system, and therefore was not a check for purposes of the worthless check statute. Under the Fourth Amendment, an arrest warrant affiant may not knowingly, or with reckless disregard for the truth, include false statements in the affidavit or knowingly or recklessly omit information which would vitiate probable cause if included. Taylor v. Meacham, 82 F.3d 1556, 1562 (10th Cir. 1996); Wolford, 78 F.3d at 489 (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978); Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990)).

Defendant's affidavit stated that plaintiff's husband signed an E-Trade check payable to the order of the Telegram, that the check was to pay a debt of M & M Investors and that Perez called E-Trade and discovered that the check was worthless. The affidavit did not state that Perez tried to deposit or cash the check. Therefore, the affidavit sufficiently reflected the fact that the check never entered the banking system. The affidavit did, however, omit the fact that the check did not contain an amount. Plaintiff alleges that because defendant's interview notes with Perez state that the check did not include an amount, defendant knowingly or recklessly omitted the information from his affidavit. See Doc. #1 at 7, ¶¶ 17-18, 20. Plaintiff ultimately argues that if the affidavit had disclosed that the check did not

---

[12](...continued)
motion. Even if the Court did consider plaintiff's supplement, it would not change the Court's analysis.

In part, the interrogatory states, "I have never spoken to [plaintiff], and I did not tell Hagen I had." Doc. #16. Plaintiff argues that Perez' statement supports her allegations that defendant's affidavit was inaccurate and that his reports do not match his affidavit. Defendant's affidavit and his report are consistent with each other, however, and with Perez' interrogatory response. Defendant's interview report states that plaintiff "repeatedly attempted to re-contact MORAL without success." Doc. #1 at 21 (emphasis added). It does not specify whether "MORAL" refers to Carlos Moral, to plaintiff or to both. Defendant's affidavit stated that Perez "continued to try to contact Carlos Moral and Julie Moral" about it. Doc. #21 at 15 (emphasis added). Neither the report nor the affidavit stated that Perez ever spoke with plaintiff about the worthless check; they are therefore consistent with Perez' interrogatory response.

state an amount, the affidavit would have lacked probable cause to arrest her. The Court disagrees.

Plaintiff's e-mail to the Telegram, and the fax sent from her flower shop, which stated that a non-existent accountant would pay the publishing bill, provided probable cause to conclude that plaintiff agreed to assist her husband in his attempt to defraud the Telegram. See K.S.A. § 21-3302 (conspiracy). The E-Trade check that plaintiff's husband sent the Telegram after plaintiff's e-mail provided probable cause to conclude that he made a false information – a written instrument, which he misrepresented would cover the $4,130.82 publishing debt, with the intent to defraud.[13] See K.S.A. § 21-3711 (false information). Even if the affidavit had stated that the E-Trade check did not include an amount, and even if the E-Trade check did not constitute a check for purposes of the worthless check statute, the affidavit would have provided probable cause to conclude that plaintiff conspired with her husband to make a false information.

In short, even if the affidavit had included the fact that the E-Trade check did not state an amount, it would have provided probable cause for plaintiff's arrest. Accordingly, plaintiff has not alleged a Fourth Amendment violation or a claim for malicious prosecution under Section 1983.

## II.    **First Amendment Retaliation**

The complaint alleges that by obtaining the arrest warrant in retaliation for plaintiff's filing of a complaint against defendant with the KBI internal affairs division and because she would not dissociate from her husband, defendant violated her First Amendment rights to free speech, to petition the government and to freedom of association. To state a Section 1983 retaliation claim, plaintiff must plausibly allege that (1) she engaged in a constitutionally protected activity; (2) defendant's actions

---

[13] The affidavit's allegation that plaintiff's husband provided the Telegram an invalid credit card number to pay the publishing bill may also provide probable cause to believe that he made a false information.

-11-

caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's actions were substantially motivated as a response to plaintiff's exercise of First Amendment rights. Howards v. Laughlin, 634 F.3d 1131, 1144 (10th Cir. 2011). Defendant attacks only the third element, i.e. whether plaintiff has alleged that her exercise of First Amendment rights was the motive for his conduct. In this regard, defendant argues that plaintiff must allege that he acted without probable cause.

### A. Causation

Defendant argues that plaintiff's complaint relies exclusively on the temporal proximity between her complaint to the KBI internal affairs division and her subsequent arrest, and that temporal proximity alone is insufficient to state a First Amendment retaliation claim. In other contexts, the Tenth Circuit has held that a six-week period between protected activity and adverse action may be sufficient by itself to show causation, but that a three-month period, without more, is insufficient. Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004) (discussing retaliation in Title VII summary judgment context); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month gap alone insufficient in Fair Labor Standards Act summary judgment context); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming two month and one week gap sufficient in Americans with Disabilities Act summary judgment context). The causation analysis in these cases also applies to First Amendment retaliation claims. Lauck v. Campbell Cnty., 627 F.3d 805, 815-16 (10th Cir. 2010).

To survive a motion to dismiss, plaintiff need only plead enough facts to show that her claims are plausible. Iqbal, 129 S. Ct. at 1950. With respect to plaintiff's freedom of speech and petition claims, the complaint alleges that plaintiff reported defendant to the KBI internal affairs division on or

about November 9, 2009, and that roughly two months later, on January 12, 2010, defendant attested to the affidavit which formed the sole basis for plaintiff's arrest. Plaintiff alleges that defendant had obtained all of the information in his affidavit prior to her internal affairs report, but that he did not decide to act on the information until after she filed the report. She also alleges that in March of 2009, defendant threatened to investigate her if she did not dissociate from her husband. Plaintiff has sufficiently alleged causation with respect to her retaliation claims. See Howards, 634 F.3d at 1145; Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (any form of official retaliation for exercising First Amendment right – including prosecution, threatened prosecution, bad faith investigation and legal harassment – constitutes infringement of right).

**B.  Probable Cause**

Relying on Becker v. Kroll, defendant argues that because plaintiff's claims are based on malicious prosecution, she must plead and prove the absence of probable cause. 494 F.3d 904, 925 (10th Cir. 2007). In Hartman v. Moore, 547 U.S. 250 (2006), the Supreme Court held that when a plaintiff alleges retaliatory prosecution – that is, when a plaintiff sues a law enforcement officer for inducing prosecution in retaliation for speech – she must allege and prove that the prosecutor lacked probable cause for bringing the charges. 547 U.S. at 265-66. Here, plaintiff does not allege that defendant induced prosecution in retaliation for speech. Rather, she alleges that defendant personally retaliated against her by obtaining a warrant for her arrest.

In Howards v.Laughlin, the Tenth Circuit declined to extend Hartman to retaliatory arrest or "ordinary retaliation cases" where the government agent who allegedly harbored the retaliatory animus was also the individual who allegedly took the adverse action. Howards, 634 F.3d 1131, 1148 (10th Cir. 2011). Like Howards, this case involves "ordinary" retaliation, i.e. plaintiff alleges that defendant both

-13-

harbored retaliatory animus and took adverse action. Hartman, 547 U.S. at 259; Howards, 634 F.3d at 1148. Therefore, plaintiff need not allege or prove that defendant acted without probable cause. See Howards, 634 F.3d at 1148.[14] Accordingly, plaintiff has sufficiently pled her First Amendment retaliation claims.

## III. Qualified Immunity

As noted, defendant seeks to dismiss plaintiff's First Amendment claims on the grounds of qualified immunity.[15] Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). At this stage, plaintiff may overcome defendant's assertion of qualified immunity by plausibly alleging that (1) defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of defendant's actions, such that it would have been clear to a reasonable officer that his conduct was unlawful. Currier, 242 F.3d at 917, 923; see Wilkins, 528 F.3d at 796-97.

---

[14] Howards involved a warrantless arrest whereas here, defendant obtained a warrant for plaintiff's arrest. This distinction, however, is immaterial. Plaintiff's allegations fall squarely within the Hartman and Howards definition of an "ordinary" retaliation case in which plaintiff is not required to plead and prove the absence of probable cause.

Moreover, the agent-magistrate relationship does not implicate the complex causation issues which arose in the inspector-prosecutor relationship in Hartman. The Supreme Court described the complex causation issue as follows: "Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise." Hartman, 547 U.S. 263. In other words, because the prosecutor might have brought charges absent the inspector's action, plaintiff should be required to show that the prosecutor lacked probable cause to "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." Id. Unlike a prosecutor, a magistrate cannot issue an arrest warrant absent a request by a government agent. Thus, plaintiff's traditional retaliatory arrest claim does not require her to bridge a gap between the motive of one person and the action of another.

[15] Because the Court has dismissed plaintiff's Fourth Amendment claims under Rule 12(b)(6), Fed. R. Civ. P., it need not decide whether defendant is entitled to qualified immunity on that claim.

-14-

Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right. Hartman, 547 U.S. at 256; Crawford-El, 523 U.S. at 593; Howards, 634 F.3d at 1143. The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. Hartman, 547 U.S. at 256; Howards, 634 F.3d at 1143. Moreover, it is well settled in the Tenth Circuit that a plaintiff who brings an "ordinary" First Amendment retaliation claim is not required to show that the defendant lacked probable cause for his actions. Howards, 634 F.3d at 1146 (in context of arrest, act taken in retaliation for exercise of constitutionally protected right actionable under Section 1983 even if act – when taken for different reason – would have been proper); DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990).

The law in this regard was clearly established in 2009 and 2010, at the time of defendant's conduct. See Howards, 634 F.3d at 1148. On this record, defendant is not entitled to qualified immunity. See Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004) (summary judgment provides typical vehicle for asserting qualified immunity defense).

**IV.     Attorney's Fees**

Defendant asks the Court to award attorney's fees under 42 U.S.C. § 1988 for time spent defending this action. Section 1988 gives the Court discretion to award a reasonable attorney's fee to a prevailing party in a civil rights action. 42 U.S.C. § 1988. Under Rule 54, Fed. R. Civ. P., the Court may assess attorney's fees only after final disposition of the case. See Fed. R. Civ. P. 54(a)-(b), (d)(2); see also Steinert v. Winn Grp., Inc., No. 98-2564-CM, 2000 WL 1466178, at *2 (D. Kan. Aug. 2, 2000). Although the Court dismisses plaintiff's malicious prosecution claim, her First and Eighth Amendment claims remain. Moreover, it appears that defendant has not complied with D. Kan. Rule 54.2, which

provides the procedural framework for requesting attorney's fees in this Court. For these reasons, defendant's request for attorney's fees under Section 1988 is premature and without merit.

**IT IS THEREFORE ORDERED** that Defendant Ronald Hagen's Motion To Dismiss (Doc. #8) filed December 13, 2010 be and hereby is **SUSTAINED in part**. The Court sustains the motion with respect to plaintiff's malicious prosecution claim and overrules it with respect to her First Amendment retaliation claims. The Court also overrules defendant's motion for fees.

**IT IS FURTHER ORDERED** that Plaintiff's Supplemental Exhibit In Response To Defendant Ronald Hagen's Motion To Dismiss And Memorandum In Support Pursuant to Fed. R. Civ. P. 12(b) (Doc. 8 & 9) (Doc. #16) filed January 6, 2011, which the Court construes as a motion for surreply, be and hereby is **OVERRULED**.

Dated this 14th day of July, 2011 at Kansas City, Kansas.

        s/ Kathryn H. Vratil
        KATHRYN H. VRATIL
        United States District Judge