# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE K. MORAL,            )
                                       )

              **Plaintiff,**      )        **CIVIL ACTION**
                                         )

**v.**                             )        **No. 10-2595-KHV**
                                         )

RONALD HAGEN,        )
                                       )

              **Defendant.**     )

_____ )

## MEMORANDUM AND ORDER

Under 42 U.S.C. § 1983, Julie K. Moral brings suit against Ronald Hagen, an agent for the Kansas Bureau of Investigation ("KBI"), for retaliatory arrest in violation of her First and Fourteenth Amendment rights to familial association. Defendant asserts qualified immunity. This matter is before the Court on <u>Defendant Ron Hagen's Motion For Summary Judgment</u> (Doc. #101) filed January 4, 2013 and plaintiff's <u>Motion For Hearing</u> (Doc. #109) filed February 14, 2013. The Court overrules plaintiff's motion.[1] For the reasons stated below, the Court finds that defendant is entitled to qualified immunity and sustains defendant's motion for summary judgment.

## Procedural History

Plaintiff initially sued defendant pro se and the Court granted leave to proceed in forma pauperis. Under 42 U.S.C. § 1983, the complaint alleged that defendant violated plaintiff's First, Fourth and Eighth Amendment rights. Within a week of being served, defendant moved to dismiss plaintiff's First and Fourth Amendment claims. Finding that defendant's affidavit provided probable cause for plaintiff's arrest, the Court dismissed plaintiff's Fourth Amendment claim for malicious prosecution.

---

[1] Upon reviewing defendant's motion and the parties' briefs, the Court finds that oral argument is not necessary and would not aid in the disposition of defendant's motion. <u>See</u> D. Kan. R. 7.2.

Memorandum And Order (Doc. #21) filed July 14, 2011 at 6-11.  Relying on Howards v. McLaughlin, 634 F.3d 1131, 1148 (10th Cir. 2011) ("Howards I"), the Court overruled defendant's motion to dismiss plaintiff's First Amendment retaliatory arrest claim.  Howards I held that in June of 2006, "it was clearly established that an arrest made in retaliation of an individual's First Amendment rights is unlawful, even if the arrest is supported by probable cause."  634 F.3d at 1148.

Plaintiff then moved to amend her complaint and defendant moved for summary judgment. Under Rule 56(d), Fed. R. Civ. P., plaintiff asked the Court to defer ruling on defendant's motion for summary judgment until she had an opportunity to take additional discovery.  After plaintiff filed a reply in support of her Rule 56(d) motion, counsel entered an appearance on her behalf.  See Entry Of Appearance (Doc. #69) filed October 7, 2011.

The Court sustained plaintiff's motion for leave to amend her complaint.  Accordingly, it overruled the portions of defendant's motion for summary judgment that related to the anticipated amendments, namely plaintiff's First Amendment retaliatory arrest claim.  The Court sustained defendant's motion for summary judgment on plaintiff's Eighth Amendment claim.  After plaintiff filed an amended complaint, the U.S. Supreme Court reversed Howards I, holding that defendants were entitled to qualified immunity because "it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation."  Reichle v. Howards, 132 S. Ct. 2088, 2097 (2012) ("Howards II").

In the pretrial order, plaintiff asserts that she is entitled to recover because "she was arrested due to Defendant's desire to retaliate against her in violation of her First and Fourteenth Amendment familial association rights."  Pretrial Order (Doc. #100) filed December 13, 2012.  Defendant again moves for summary judgment, arguing that plaintiff has not produced evidence that he specifically intended to

deprive her of a protected familial relationship and that he is entitled to qualified immunity.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits and other materials, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a), (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of her case on which she has the burden of proof. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Celotex, 477 U.S. 317, 323 (1986)); see also Liberty Lobby, 477 U.S. at 251. In deciding a motion for summary judgment the Court views the record in the light most favorable to the nonmoving party. Koch v. City of Del City, 660 F.3d 1228, 1238 (D. Kan. 2011).

Because defendant has asserted a qualified immunity defense on summary judgment, plaintiff must first show that (1) defendant violated a constitutional right and (2) that constitutional right was clearly established. Vondrak v. City of Las Cruces, 535 F.3d 1198, 1205 (10th Cir. 2008) (quoting Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc)). This is a "heavy two-part burden." Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007) (quoting Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)). Plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it"; she "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with

specificity." Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009); see also Swanson v. Town of

Mountain View, Colo., 577 F.3d 1196, 1200 (10th Cir. 2009). The Court has discretion to decide which

of the two prongs of the qualified immunity analysis to address first. Pearson v. Callahan, 555 U.S. 223,

236 (2009).[2]

In determining whether a right is clearly established, the relevant, dispositive inquiry is whether

it would be clear to a reasonable officer that his conduct was unlawful under the circumstances. Saucier

v. Katz, 533 U.S. 194, 202 (2001) receded from on other grounds by Pearson, 555 U.S. 223. Summary

judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his

conduct would be clearly unlawful. Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). For a right

to be clearly established, the Court looks for a Supreme Court or Tenth Circuit decision on point, or

clearly established weight of authority from other courts finding the law to be as plaintiff maintains.

Koch, 660 F.3d at 1246 (quoting Lundstrum v. Romero, 616 F.3d 1108, 1119 (10th Cir. 2010)).

If – and only if – plaintiff carries her two-part burden, defendant bears the traditional burden of

the movant for summary judgment – showing that there are no genuine issues of material fact and that

he is entitled to judgment as a matter of law. Koch, 660 F.3d at 1238 (quoting Clark v. Edmunds, 513

F.3d 1219, 1222 (10th Cir. 2008)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If

---

[2]       Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 232. Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The "driving force" behind the qualified immunity doctrine is a desire to ensure that "insubstantial claims against government officials will be resolved prior to discovery." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). Accordingly, the U.S. Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

defendant meets his burden, the burden shifts to plaintiff to demonstrate that genuine issues remain for trial as to those dispositive matters on which she carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Plaintiff may not rest on her pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

### Facts

The following facts are either uncontroverted, deemed admitted or construed in the light most favorable to plaintiff, the nonmovant. The Court recites only those facts that are material to deciding defendant's motion for summary judgment and disregards any facts not supported by citations to the record.

Carlos Moral and plaintiff Julie Moral are husband and wife. They have never been separated or divorced. During the time period in question, the Morals were directors of M&M Investors, a former Kansas corporation. Among other things, M&M Investors operated two newspapers in western Kansas.

## I.    March 12, 2009 Interview

On March 12, 2009, defendant interviewed plaintiff concerning an investigation of Carlos Moral. At the time, defendant was a Senior Special Agent with the KBI. During the interview, defendant asked plaintiff about potential criminal activity conducted through M&M Investors. He stated that plaintiff's husband was laundering money and that he was going to deport her husband to Cuba. Defendant also stated that he would be seeing plaintiff every week if she continued supporting her husband and did not cut ties with him. Defendant told plaintiff that she needed to save herself. He never told plaintiff that she was the target of an investigation. He never expressly told plaintiff to divorce her husband. Defendant told plaintiff to tell her husband everything they talked about in the interview. Defendant did not give plaintiff <u>Miranda</u> warnings and plaintiff did not understand defendant's questions to be related to her conduct.

## II.    Garden City Telegram

In April of 2009, M&M Investors engaged the Garden City Telegram to provide printing services for one of its newspapers, the Grant County Gazette. Before April of 2009, M&M Investors had used numerous entities to print its newspapers. Between January 1, 2005 and April 1, 2009, three creditors sued M&M Investors to collect payment for services rendered. The Garden City Telegram stopped printing the Gazette on June 16, 2009 for failure to pay for services rendered. Between April 1, 2009, and approximately June 30, 2009, M&M Investors was in arrears on payments to the Garden City Telegram.

According to the Garden City Telegram's business manager, Marisa Perez, in June of 2009 Carlos Moral attempted to secure additional services through the use of a credit card with insufficient

funds to cover the amount to be charged,[3] a "check to hold" drawn on an account with insufficient funds to cover the amount due and owing, and promises of payment from Scott Davis, an accountant in Wichita. By fax, Perez received a FedEx airbill dated June 16, 2009, which listed Scott Davis as sender and Perez as recipient. The fax was sent from plaintiff's flower shop, the Tiger Lily. The purpose of the FedEx airbill was to show Perez that Davis had mailed a check to cover M&M Investors' debt and to induce the Garden City Telegram to resume printing its paper. Defendant later discovered that Scott Davis was fictitious. He found no certified public accountant or public accountant named Scott Davis in Wichita and no Scott Davis at the address listed on the FedEx airbill. He did find a resident named David Lutz, a known associate of Carlos Moral. Perez did not know plaintiff; she dealt only with Carlos Moral.

Plaintiff now contends that in a memo to Perez dated June 17, 2009, Carlos Moral explained the incorrect address on the airbill. See Memorandum, attached as Ex. 8 to plaintiff's Response To Defendant's Second Motion For Summary Judgment (Doc. #107) filed February 5, 2013. Before submitting it in support of her response, plaintiff had not previously disclosed the memo. On March 31, 2011, Carlos Moral was deposed in a factually identical case in Finney County, Kansas. During an extensive deposition, he did not mention this memorandum, even when specifically asked about communications with Perez that occurred after he faxed her the airbill. Carlos Moral Depo. at 87:10-15, attached as Ex. 3 to Defendant's Reply To Plaintiff's Response To Defendant's Motion For Summary

---

[3] Defendant's brief characterized the credit card as "inactive." Plaintiff disputes this characterization, but does not dispute that the credit card would not have been honored to cover the amount due and owing. See Response To Defendant's Second Motion For Summary Judgment (Doc. #107) filed February 5, 2013 at 4, ¶ 11 (in relevant part, controverting only that Perez did not say that the credit card was inactive); see also Investigative Report of Sattler Interview, attached as Ex. 3 to Defendant's Second Motion For Summary Judgment (Doc. #107) filed February 5, 2013 (describing credit card as "no good").

<u>Judgment</u> (Doc. #108) filed February 13, 2013 (Q: "Did you, at some time, have any follow-up conversations with Marisa Perez regarding the fact that you had told her you were going to fax her or Fed Ex a check to her, but then didn't?" A: "We may have had a conversation. I couldn't tell you."); <u>see also</u> <u>id.</u> at 84-85. Perez has sworn an affidavit stating, "I was never sent this memorandum by Carlos Moral, and I never received an explanation for the shipping label Mr. Moral sent." Affidavit, attached as Ex. 4 to <u>Defendant's Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment</u> (Doc. #108).

The Court agrees with defendant that it appears the memorandum was recently created for the purpose of responding to his motion and to cast a shadow on defendant's investigation. Because plaintiff did not properly disclose the memo, the Court will not consider it. Under Rule 37(c)(1), Fed. R. Civ. P., "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiff has not shown that springing the memorandum on defendant in her response to summary judgment was substantially justified or harmless. Furthermore, even if the Court considered the memorandum, it would not change this decision.

On June 30, 2009, Dena Sattler, an employee of the Garden City Telegram, e-mailed plaintiff that it would not continue printing her newspaper because her account was in arrears. Sattler received a response which stated that the account was in arrears because an accounting firm in Wichita had been embezzling money from the Morals, and that payment was forthcoming.[4] Plaintiff admits that the e-mail

---

[4]     Sattler sent the e-mail to plaintiff's e-mail address – "jmoral1@pld.com" – which is the same e-mail address she has used in this case. Sattler addressed the email to "Julie" and the response
(continued...)

attempted to induce additional printing services based on these representations. Pl. Depo. at 158:3-21.

## III. Search Of M&M Investors' Office

On May 14, 2009, defendant accompanied Grant County Sheriff Lance Babcock to the building that plaintiff and Carlos Moral rented from Richard and Norma Dudley at 105 North Main Street in Ulysses, Kansas. They went inside and removed boxes of business checks, deposit stamps and other important documents. They sealed the items in a box which they kept at the Grant County Sheriff's Office. Plaintiff contends that they did all this without any warrant or judicial process.[5] On June 1, 2009, Laurie Walta, the daughter of Richard and Norma Dudley, contacted defendant regarding information she found on the computers the Dudleys removed from the building. Defendant thanked Walta for the information, saying "nice work . . . interested in changing career fields?"

## IV. Complaints About Defendant's Conduct

Plaintiff called Sheriff Babcock and strongly protested his actions. She also complained to Assistant Grant County Attorney, Gary Hathaway. In early October of 2009, plaintiff and Carlos Moral complained to the Ulysses Chief of Police, Alan Olson. On October 7, 2009, Chief Olson took their

---

[4](...continued)
stated, "This is Julie Moral." Yet plaintiff denies sending the e-mail.

Plaintiff also states that defendant knew that Carlos Moral had accused an accountant, Randy Porter, of embezzling money from him. The relevance of this point is unclear. The e-mail does not identify Porter as the embezzler and does not even indicate that Porter worked in Wichita. Moreover, Carlos Moral's accusation regarding Porter came only after Porter accused him of passing bad checks. The Board of Accountancy found that Carlos Moral's allegations lacked merit, and in 2008 he was convicted for passing bad checks. The argument regarding Porter is simply a distraction from the fact that the e-mail seems to be referring to the fictitious Wichita accountant, Scott Davis – the same one who purportedly sent payment by FedEx.

[5]    Carlos Moral sued Sheriff Babcock and the Dudleys based on these events. See Moral v. Grant Cnty. Sheriff, No. 09-1230 (D. Kan.). The Tenth Circuit affirmed dismissal of his claims. Moral v. Grant Cnty. Sheriff, 424 Fed. Appx. 803 (10th Cir. 2011).

report and reported the matter to Assistant Attorney General Steve Karrer.

On November 5, 2009, based on advice from KBI Agent Jason LaRue, plaintiff and Carlos Moral complained to KBI General Counsel Laura Graham about defendant's conduct. Graham told plaintiff to put her complaints in a letter. On November 12, 2009, attorney Linda Eckelman wrote KBI Director Robert Blecha stating that she represented both plaintiff and Carlos Moral. She reiterated that plaintiff was not involved in the alleged criminal activity and asked that the KBI investigate defendant's conduct.

On or about December 6, 2009, plaintiff and Carlos Moral met with KBI Internal Affairs investigator David Hutchings. They expanded on the complaints they had made to General Counsel Graham and Director Blecha. Plaintiff told Agent Hutchings that she was very concerned about the potential of defendant retaliating against her. In the month following the meeting, defendant described plaintiff and Carlos Moral as the "SW KS version of Bonnie and Clyde." Defendant also told Sattler that Carlos Moral and the County Attorney or Assistant County Attorney were involved in a $10 million money laundering scheme. After plaintiff and Carlos Moral met with Hutchings, defendant added an allegation of conspiracy to his affidavit.

Between July of 2009 and January of 2010, plaintiff refused to let the KBI interview her. On or about January 21, 2010, the Finney County Attorney charged plaintiff and Carlos Moral with two criminal offenses – theft of services and giving a worthless check. The charges were based on defendant's affidavit which alleged four crimes: theft, making a false information, giving a worthless check and conspiracy. See Memorandum And Order (Doc. #21) (discussing in detail defendant's affidavit and finding that it provided probable cause for plaintiff's arrest).[6]

---

[6] The parties dispute when defendant submitted his affidavit to the Finney County Attorney for charging. Defendant states that he submitted the affidavit to the Finney County Attorney on
(continued...)

## V.     Plaintiff's Arrest And Preliminary Hearing

On January 21, 2010, plaintiff was arrested and removed from her house in handcuffs.  Plaintiff states that while she was held at the Grant County Sheriff's Office, defendant laughed and snickered at her.  Defendant denies doing so.

At the conclusion of the State's evidence at a preliminary hearing, a Finney County magistrate judge dismissed the charges against both plaintiff and Carlos Moral.  In doing so, the presiding Magistrate Judge did not consider Hagen's affidavit.  The State did not call Hagen as a witness.  At the hearing, Linda Eckelman's driver overheard defendant saying "they will get theirs" and "we will see how brave she is now."  The Court has previously ruled that defendant's affidavit provided probable cause for plaintiff's arrest.  See Memorandum And Order (Doc. #21).

## Analysis

## I.     Plaintiff's Remaining Claim

Plaintiff contends that the pretrial order preserved two retaliatory arrest claims: (1) a First Amendment claim alleging that defendant retaliated against her because she reported him to the KBI and (2) a Fourteenth Amendment claim alleging that defendant intentionally interfered with her right to familial association with her husband.  Plaintiff's Response (Doc. #107) at 10.  The Court disagrees. The pretrial order states: "Plaintiff asserts that she is entitled to recover upon the following theory: That she was arrested due to Defendant's desire to retaliate against her in violation of her First and Fourteenth Amendment familial association rights."  Pretrial Order (Doc. #100) at 6.  Based on the plain language of the pretrial order, plaintiff asserts a claim for retaliatory arrest in "violation of her . . . familial

---

[6](...continued)
November 2, 2009, but he signed it on January 12, 2010.

association rights," which she contends arises under the "First and Fourteenth Amendment[s]."[7] Id.

The pretrial order controls the course of the action unless the Court modifies it in accordance with D. Kan. Rule 16.2(c). Fed. R. Civ. P. 16(d); D. Kan. R. 16.2(c); Pretrial Order (Doc. #100) at 1. The purpose of the pretrial order is to "insure the economical and efficient trial of every case on its merits without chance or surprise." Koch v. Koch Indus., Inc., 179 F.R.D. 591, 596 (D. Kan. 1998) (quoting Smith v. Ford Motor Co., 626 F.2d 784, 795 (10th Cir. 1980)) (internal quotation marks omitted). Pretrial orders "should be liberally construed to cover any of the legal or factual theories that might be embraced by their language." Id. (quoting Trujillo v. Uniroyal Corp., 608 F.2d 815, 818 (10th Cir. 1979)) (internal quotation marks omitted). But this "does not require courts to fabricate a claim that a plaintiff has not spelled out." Shaub v. Newton Wall Co./UCAC, 153 Fed. Appx. 461, 465-66 (10th Cir. 2005) (quoting Maniccia v. Brown, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999)) (internal quotation marks omitted); cf. Zokari v. Gates, 561 F.3d 1076, 1087 (10th Cir. 2009) (citing Viernow v. Euripides Dev. Corp., 157 F.3d 785, 800 (10th Cir. 1998), Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)) (new theory of recovery not raised by complaint even though it alleged predicate facts). Any "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002). The decision to exclude facts or issues as not found in the pretrial order is committed to the Court's sound discretion. Koch, 179 F.R.D. at 596 (citing Smith, 626 F.2d at 795).

Throughout this case, plaintiff's theories and the factual basis therefor have been a moving

---

[7] An e-mail exchange between plaintiff's counsel and defendant's counsel confirms this reading of the pretrial order. Counsel debated whether a claim for violation of a right to familial association arises under the First or Fourteenth Amendment in the Tenth Circuit. Plaintiff's counsel ultimately stated: "just put that plaintiff claims familial association is based on the 1st and 14th and that will protect me." Ex. 7, attached to Defendant's Reply (Doc. #108), at 1.

target.[8]  The purpose of a pretrial order is to immobilize the target for the remainder of the lawsuit; it may be amended only to prevent manifest injustice.  See Fed. R. Civ. P. 16(d); Koch, 179 F.R.D. at 596.

Plaintiff contends that the "[q]uestions of fact in the pretrial order clearly relate to both the First Amendment retaliation claim (Factual issues 1-7) and her claim of familial association under the Fourteenth Amendment. (Factual issues 8-10)."  Plaintiff's Response (Doc. #107) at 11.  But the factual issues listed in the pretrial order do not reference plaintiff's reports to the KBI.[9]  They simply consist of generic factual issues that could arise in just about any First Amendment retaliation case.  Moreover, they are consistent with plaintiff's contention that the right to familial association arises under the First Amendment.  See Pretrial Order (Doc. #100) at 5; Ex. 7, attached to Defendant's Reply (Doc. #108),

---

[8]     Compare Civil Complaint (Doc. #1) filed November 1, 2010 at 7 (alleging First, Fourth and Eighth Amendment claims, including allegation that defendant retaliated against plaintiff "based on her complaint against [defendant] and her relationship to her husband"), with Amended Complaint (Doc. #83) filed May 25, 2012 (filed by counsel, alleging additional facts but not identifying claim(s) against defendant), with Pretrial Order (Doc. #100) (after Court dismissed Fourth and Eighth Amendment claims, alleging First Amendment claim based only on interference with familial association rights), and with Plaintiff's Response (Doc. #107) at 10 (asserting First Amendment retaliation claim based on reports to KBI and Fourteenth Amendment familial association claim).

[9]     Factual issues 1-7 state as follows:

1.    Whether Plaintiff engaged in activity that is protected by the First Amendment.
2.    Whether Defendant was aware of any First Amendment activity on the part of Plaintiff.
3.    Whether the alleged adverse action taken by Defendant pre-dated the First Amendment conduct claimed by Plaintiff.
4.    Whether causation in a claim against a law enforcement officer can be established when an arrest is supported by an affidavit completed by the law enforcement officer, but charged by the County Attorney.
5.    Whether any action taken by Defendant was motivated by a desire to retaliate against Plaintiff for engaging in constitutionally protected conduct.
6.    Did the defendant submit a false affidavit?
7.    Was the arrest supported by probable cause?

Pretrial Order (Doc. #100) at 8.

at 1 (counsel's e-mail exchange regarding plaintiff' familial association claim). The parties agreed to the pretrial order after discovery had closed and after fairly extensive motion practice earlier in the case. To "now suggest the court should read between the lines to find a wholly unstated theory of liability defies common sense" and would "defy the purpose of having a pretrial order in the first place." <u>Clean Harbors, Inc. v. CBS Corp.</u>, 875 F. Supp.2d 1311, 1319 (D. Kan. 2012).

Again, in the pretrial order plaintiff's theory of recovery was that "she was arrested due to Defendant's desire to retaliate against her in violation of her First and Fourteenth Amendment familial association rights." <u>Pretrial Order</u> (Doc. #100) at 5. It does not reasonably identify a claim that defendant retaliated against plaintiff for reporting him to the KBI. The Court will not allow plaintiff to bootstrap into the pretrial order a wholly unstated theory of recovery, even if she may have asserted the claim earlier in the case. <u>See</u> <u>Wilson</u>, 303 F.3d at 1215; <u>Clean Harbors</u>, 875 F. Supp.2d at 1319; <u>cf.</u> <u>Zokari</u>, 561 F.3d at 1087. Moreover, in light of counsel's e-mail exchange, <u>see</u> <u>supra</u> n.7, plaintiff's attempt to do so appears to be completely disingenuous. Plaintiff has not asked to amend the pretrial order, and the Court limits her claims to exactly what the pretrial order says – retaliatory arrest in violation of plaintiff's familial association rights under the First and Fourteenth Amendments. <u>Pretrial Order</u> (Doc. #100) at 5. At this stage, plaintiff has waived any and all other claims that the pretrial order does not mention. Even if plaintiff had asserted a retaliation claim based on her reports to the KBI, defendant would be entitled to qualified immunity on that claim. <u>See</u> <u>infra</u> Analysis Part III.

## II.     Plaintiff's Request For Reconsideration Of Finding Of Probable Cause

In partially sustaining defendant's motion to dismiss, the Court found that defendant's affidavit provided probable cause to arrest plaintiff and Carlos Moral. <u>Memorandum And Order</u> (Doc. #21) at 6-11. In response to defendant's motion for summary judgment, plaintiff "respectfully requests that the

Court re-examine this issue under FRCP Rule 60(b)." Plaintiff's Response (Doc. #107) at 18. She did not file a motion as Rule 60(b), Fed. R. Civ. P., and D. Kan. Rule 7.3(a) require. Fed. R. Civ. P. 60(b) (on motion and just terms, court may relieve party from final order for certain reasons); D. Kan. R. 7.3(a) (parties seeking reconsideration of dispositive orders or judgments must file motion pursuant to Fed. R. Civ. P. 59(e) or 60).

Nevertheless, assuming that Rule 60(b) is the proper basis for seeking reconsideration, plaintiff' purported Rule 60(b) motion is untimely. See Fed. R. Civ. P. 60(c)(1). But see Coffeyville Res. Ref. & Mktg., 748 F. Supp.2d at 1264 n.3 (citing Fye v. Okla. Corp. Com'n, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008), Raytheon Constrs., Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003)) (Rules 59(e) and 60(b) apply only to final orders and judgments that adjudicate all of parties' remaining rights and liabilities). Rule 60(c)(1) provides that except in circumstances not applicable here, a Rule 60(b) motion must be made within a reasonable time and no later than one year after entry of the order in question. Plaintiff requested reconsideration on February 5, 2013 – well more than one year after the Court entered the order she challenges and also more than a year after counsel entered an appearance on behalf of plaintiff. See Memorandum And Order (Doc. #21) filed July 14, 2011; Entry Of Appearance (Doc. #69) filed October 7, 2011.

Moreover, plaintiff's request for reconsideration lacks merit. It relies on the fact that at the time the Court ruled on defendant's motion to dismiss, plaintiff "was proceeding pro se and did not have the benefit of counsel in framing the issues and presenting evidence for the Court's consideration." Plaintiff's Response (Doc. #107) at 18. Plaintiff "acknowledges that as a pro se litigant, she had not done a lawyerly job of marshaling the evidence for the Court." Id. Plaintiff challenges the Court's previous order by reframing facts the Court relied on and offering new facts not before the Court at the

time.  Id. at 19-25.  Although the Court holds pro se pleadings to a less stringent standard than formal pleadings drafted by lawyers, the Court does not assume the role of advocate for a pro se litigant; she must follow the same rules that govern all other litigants.  See Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Rule 60(b) provides limited reasons for obtaining relief from a final order; a litigant's pro se status is not one of them.  See Fed. R. Civ. P. 60(b)(1)-(6).

Even if the Court construed plaintiff's request for relief under Rule 60(b) as a motion for reconsideration based on a court's general authority to reconsider its decisions before final judgment, see Wessel v. City of Albuquerque, 463 F.3d 1138, 1143-44 (10th Cir. 2006), plaintiff has not provided any legal or factual basis for granting her request for reconsideration.  The Court has recognized the following bases for reconsidering decisions before final judgment: (1) an intervening change in controlling law, (2) the availability of new evidence[10] or (3) the need to correct clear error or prevent manifest injustice.  See Fed. R. Civ. P. 54(c); D. Kan. R. 7.3(b); Coffeyville Res. Ref. & Mktg., 748 F. Supp.2d at 1264 & n.3; Turner v. Nat'l Council of State Bds. of Nursing, Inc., No. 11-2059-KHV, 2013 WL 139750, at *1-2 (D. Kan. Jan. 10, 2013); Faith Techs., Inc. v. Fidelity & Deposit Co. of Md., No. 09-2375-KHV, 2011 WL 3793970, at *1-2 (D. Kan. Aug. 25, 2011).  A motion to reconsider is not a second opportunity for the losing party to make her strongest case, to rehash arguments or to dress up arguments that previously failed.  Voelkel v. Gen. Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan. 1994).  A party's failure to present her strongest case in the first instance does not entitle her to a second

---

[10]     Plaintiff has not attempted to show that the new facts she relies on in response to defendant's motion for summary judgment satisfy the standard for newly discovered evidence, i.e. that it is newly discovered, material, not merely cumulative, etc.  See Wessel v. City of Albuquerque, 463 F.3d 1138, 1143-44 (10th Cir. 2006); Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981); Webb v. Deluxe Fin. Servs., Inc., No. 05-2137-CM, 2007 WL 1520919, at *2 (D. Kan. May 22, 2007).

chance in the form of a motion to reconsider. <u>Cline v. S. Star Cent. Gas Pipeline, Inc.</u>, 370 F. Supp.2d 1130, 1132 (D. Kan. 2005). Whether to grant plaintiff's request for reconsideration is left to the Court's discretion. Plaintiff's failure to do a "lawyerly job of marshaling the evidence for the Court" is not a sound basis to reconsider a previous decision. For each of the reasons stated above, the Court denies plaintiff's request.

In any event, the repackaged evidence and arguments that plaintiff presents in her response do not undermine the Court's finding that based on the information available to defendant at the time, he had probable cause to believe that plaintiff conspired with her husband to make a false information in violation of K.S.A. §§ 21-3302 and 21-3711. <u>See</u> <u>Memorandum And Order</u> (Doc. #21). A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime, which requires "an overt act in furtherance" of the agreement. K.S.A. § 21-3302. Making a false information is "making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action."

Among other things, the facts in the affidavit show that plaintiff was a principal owner of M&M Investors which secured printing services from the Garden City Telegram without paying for them. Plaintiff  sent an e-mail to Sattler at the Garden City Telegram, acknowledging the failed attempts of Carlos Moral to induce the Garden City Telegram to continue printing their paper by trying to pay the debt with various insufficient forms of payment. Plaintiff now denies sending the e-mail. She claims that someone else must have used her e-mail account to send it. This does not, however, change the fact that at the time of defendant's investigation, it was reasonable for him to believe that plaintiff sent the

e-mail. Plaintiff claims that defendant knew that plaintiff's husband, Carlos Moral used the "jmoral1@pld.com" e-mail address, but she has not provided any facts to support this contention. Regardless, even if plaintiff shared the e-mail account with Carlos Moral, nothing in the record suggests that defendant knew that someone other than plaintiff sent that particular e-mail to Sattler. Plaintiff has admitted that she could understand why someone would conclude that she wrote the e-mail, which she acknowledged was an attempt to induce the Garden City Telegram to resume printing her newspaper without paying the outstanding debt. See Pl. Depo. at 158:3-21.

At her deposition, plaintiff acknowledged that the e-mail attempted to induce the Garden City Telegram to continue printing papers for M&M Investors by promising future payment. Pl. Depo. 158:7-21. This e-mail links plaintiff to Carlos Moral's scheme to defraud the Garden City Telegram. The fax from plaintiff's flower shop, the Tiger Lily, indicating that a non-existent accountant had sent payment to cover M&M Investors' outstanding debt, also reasonably links plaintiff to Carlos Moral's scheme to defraud the Garden City Telegram.[11] Thus, at the very least, defendant's affidavit provided probable cause for plaintiff's arrest for conspiracy to make a false information. See K.S.A. §§ 21-3302 (conspiracy), 21-3711 (making false information); Kerns v. Bader, 663 F.3d 1173, 1188 (10th Cir. 2011) (citing Texas v. Brown, 460 U.S. 730, 742 (1983), United States v. Ludwig, 641 F.3d 1243, 1252 (10th Cir. 2011)) (probable cause simply requires "substantial probability" that suspect committed crime, i.e., something more than bare suspicion – not proof beyond reasonable doubt or even preponderance of

---

[11]    The memorandum that Carlos Moral supposedly sent to Perez does not affect this finding because the record does not indicate that defendant had any knowledge of the memorandum at the time. Indeed, as stated above, the record indicates that the memo was manufactured after the fact.

-18-

evidence); <u>Memorandum And Order</u> (Doc. #21).[12] For these reasons, the Court declines to reconsider its finding that defendant's affidavit provided probable cause for plaintiff's arrest.

## III.    Retaliation In Violation Of Plaintiff's First And Fourteenth Familial Association Rights

As discussed above, plaintiff's sole claim is for retaliatory arrest in violation of her right to familial association with her husband under the First and Fourteenth Amendments. <u>Pretrial Order</u> (Doc. #100) at 5. The Tenth Circuit has repeatedly recognized the right to familial association as a "liberty interest" protected by the Due Process Clause of the Fourteenth Amendment, not the First Amendment. <u>Lowery v. Cnty. of Riley</u>, 522 F.3d 1086, 1092 (10th Cir. 2008); <u>J.B. v. Washington Cnty.</u>, 127 F.3d 919, 927 (1997); <u>Griffin v. Strong</u>, 983 F.2d 1544, 1547 (10th Cir. 1993); <u>see also</u> <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617-22 (1984); <u>Trujillo v. Bd. of Cnty. Com'rs of Santa Fe Cnty.</u>, 768 F.2d 1186, 1189-09 & n.7 (10th Cir. 1985).[13]

Plaintiff emphasizes the undisputed point that spouses are protected by the right to familial association. The question here, however, "is not the general right to be free from retaliation for one's [familial association], but the more specific right to be free from a retaliatory arrest that is otherwise

---

[12]     Although defendant's affidavit did not expressly allege theft of services under then-K.S.A. § 21-3704, the facts alleged in the affidavit are sufficient to provide probable cause to believe that plaintiff committed and/or conspired to commit theft of services. Theft of services requires "obtaining from another by deception, threat, coercion, stealth, tampering or use of false token or device." K.S.A. § 21-3704 (repealed and recodified by 2010 Kan. Sess. Laws Ch. 136, New Sec. 87, which combines theft of property and theft of services but makes no other material change).

[13]     In <u>Trujillo</u>, the Tenth Circuit dealt with a similar claim. Plaintiffs in that case stated that defendants "deprived [them] of their First and Fourteenth Amendment rights to associate with, to enjoy the company of, to have the familial association with, and communication with, Richard Trujillo, deceased." 768 F.2d at 1188. Reading the pleadings in the light most favorable to plaintiffs, the Tenth Circuit interpreted this "allegation of a right of familial association as an assertion of the liberty interest discussed in <u>Roberts v. United States Jaycees</u>, 468 U.S. 609 (1984)," <u>i.e.</u> an interest protected by the Due Process Clause of the Fourteenth Amendment. <u>Trujillo</u>, 768 F.2d at 1188 n.4.

-19-

supported by probable cause." Howards II, 132 S. Ct. at 2094; see also id. at 2094 n.5 (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011)) (clearly established law not defined at "high level of generality"); Green, 574 F.3d at 1300 (plaintiff must identify clearly established right with specificity). Plaintiff also stresses that defendant "was specifically focused on [her] familial association"; he "specifically attempted to interfere with it to accomplish his ends – that being deporting or jailing [her husband]." Plaintiff's Response (Doc. #107) at 17. She relies on Sausnavas v. Stover, 196 Fed. Appx. 647 (10th Cir. 2006), and Lowery v. Riley County, Kansas, 522 F.3d 1086 (10th Cir. 2008), for the proposition that Section 1983 claims for violation of familial association are viable. But plaintiff misses the point; these cases do not address "the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." Howards II, 132 S. Ct. at 2094.

Plaintiff has not cited a single case to support her claim that even though she was arrested pursuant to a warrant supported by probable cause, defendant may nonetheless be held liable for retaliatory arrest in violation of her right to familial association with her husband. The Supreme Court "has never held that there is such a right," and has found that such a right was not clearly established in the Tenth Circuit in 2006. Howards II, 132 S. Ct. at 2094. Plaintiff seems to concede that if the Court does not reverse its decision that plaintiff's arrest was supported by probable cause, defendant would be entitled to qualified immunity under Howards II. See Plaintiff's Response (Doc. #107) at 17-18 ("problem with defendant's argument is that there was no probable cause to support [plaintiff's] arrest").

The Court has already considered and rejected plaintiff's argument that defendant's affidavit did not provide probable cause for her arrest. On this record, plaintiff has not carried her heavy burden of showing that at the time of her arrest it was clearly established that an arrest pursuant to a warrant supported by probable cause could violate the arrestee's right to familial association. Defendant is

therefore entitled to qualified immunity.  See Howards II, 132 S. Ct. at 2096-97; see also Bergren v. City of Milwaukee, 811 F.2d 1139, 1144 (7th Cir. 1987) (arrest and brief detention of juvenile with probable cause did not violate parents' right to familial association); Soto v. City of Laredo, 764 F. Supp. 454, 456 (S.D. Tex. 1991) (right to familial association not impermissibly infringed when state arrests family member with probable cause); cf. Griffin, 983 F.2d 1544, 1547-49 (state's interest in investigating cases of alleged child abuse outweighs plaintiff's right of familial association with husband where defendant lied to plaintiff that husband had confessed to child abuse, questioned her morals for believing her husband, used plaintiff to pressure her husband to confess to child abuse and encouraged plaintiff to move to another state and start her life over).[14]

**IT IS THEREFORE ORDERED** that Defendant Ron Hagen's Motion For Summary Judgment (Doc. #101) filed January 4, 2013, be and hereby is **SUSTAINED**.

**IT IS THEREFORE ORDERED** that and plaintiff's Motion For Hearing (Doc. #109) filed February 14, 2013, be and hereby is **OVERRULED**.

Dated this 17th day of April, 2013 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[14] Even if plaintiff had preserved a First Amendment retaliation claim based on her reports to the KBI, defendant would be entitled to summary judgment on that claim based on qualified immunity under Howards II.